# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>NINETEEN CELLPHONES CURRENTLY LOCATED WITH ATF AT 90 K STREET, NORTHEAST, WASHINGTON, D.C. |

18-sw-_____

### AFFIDAVIT IN SUPPORT OF AN APPLICATION
### UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Rebekah Moss, being first duly sworn, hereby depose, and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of nineteen cellphones that are currently in law enforcement possession, as described in Attachments A-1 through A-19 (incorporated herein by reference), and the extraction from that property of electronically stored information as described in Attachment B (incorporated by reference).

2.      I am "an investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3.      I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) since May 2014, and a sworn law enforcement officer for over eleven years.   I am currently assigned to the ATF Washington Field Division, High Intensity Drug Trafficking Area (HIDTA) group that is tasked with investigating violent and drug-related crime.

4.      I have successfully completed numerous training programs hosted by ATF, the Federal Law Enforcement Training Center, and other federal law enforcement agencies and

organizations.   I have received specialized training in the investigation of federal crimes involving the trafficking of firearms and controlled substances.   Further, I have participated in numerous drug and firearm trafficking investigations that resulted in the arrest and conviction of numerous subjects, the seizure of property and assets, and the seizure of controlled substances and firearms.

5.     Through instruction, training, and participation in investigations, as well through consultation with other agents and law enforcement personnel, I have become familiar with the manner and methods by which narcotics traffickers conduct their drug trafficking operations. Through my experience, I am also aware that narcotics traffickers possess firearms to assist them in the trafficking of narcotics. Firearms are used by drug traffickers for protection and intimation and they are maintained in secure places, such as, residences, stash houses, and vehicles. In addition, drug traffickers travel with their firearms when outside their residences.

6.     Since this affidavit is being submitted for the limited purpose of obtaining a search warrant for cellphones, I have not set forth each and every fact learned during the course of this investigation. Facts not set forth herein are not being relied upon in this affidavit in support of the warrant. I make this affidavit based, in part, on my personal knowledge and observations derived from my participation in this investigation, information provided by other agents and law enforcement officers, reports and data provided by other officers which I have read and reviewed, and, in part, upon information and belief. The sources of my information and belief include, but are not limited to: a) oral and written reports regarding this and other investigations which I have received, directly or indirectly, from agents of the ATF, and other law enforcement officers; and b) physical surveillance conducted by your affiant and other agents and officers who have reported to me directly or indirectly.

**AFFIANT'S KNOWLEDGE, TRAINING, AND**
**EXPERIENCE RELATING TO CELLULAR PHONES**

7.      Based on your affiant's knowledge, training, and experience, a cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log," which records the telephone number, date, and time of calls made to and from the phone.

8.      In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. In this capacity, your affiant knows that a cellular phone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, audio and video recording device, and personal digital assistant (PDA), and can store information for long periods of time. Similarly, information that has been viewed via the Internet is typically stored for some period of time on the device. Even when a user deletes information from a cellular phone, it can sometimes be recovered with forensics tools.

9.      In your affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Your affiant also knows that those involved in criminal activities take, or cause to be taken, photographs of themselves, their associates, property derived from their criminal activities, and

their products, on cellular telephones.

10.     Your affiant has consulted with forensic cellular phone examiners who regularly conduct examinations of cellular phones and has learned that conducting cellular phone examinations is a highly technical process using specific tools for which the examiners receive training.

**AFFIANT'S KNOWLEDGE OF CELLPHONES REGARDING THE TRAFFICKING OF NARCOTICS AND THE POSSESSION OF FIREARMS**

11.     Based on your affiant's knowledge, training, and experience, and in the knowledge, training, and experience of other members of ATF, cellphones are tools of the narcotics trade. Narcotics traffickers communicate with customers, suppliers, and coconspirators via cellphones. Narcotics traffickers use cellphones to arrange meetings, request narcotics, take narcotics orders, and arrange for coconspirators to obtain and distribute narcotics.  To avoid detection by law enforcement, drug traffickers commonly use more than one cellphone and often send text messages, rather than engage in oral communications.

12.     Cellphones used by narcotics traffickers contain valuable information and evidence relating to their narcotics trafficking.   Such information consists of, but is not limited to: call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and any other stored electronic data. This information can: (i) reflect the preparation for, arrangement of, and commission of the trafficking of narcotics; (ii) identify locations where narcotics traffickers traveled to before and after transporting or selling narcotics; (iii) reflect the ownership and use of the cellphones by the narcotics traffickers; (iv) document meetings and communications between narcotics traffickers, their customers, associates, and coconspirators; (v) reflect communications between narcotics traffickers and other individuals, discussing the trafficking of narcotics; (vi) reflect communications between narcotics traffickers

and other individuals who may have assisted or provided support in the trafficking of narcotics; (vii) document or contain evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of narcotics relating to the trafficking of narcotics; and (viii) document or contain evidence of the purchase of items from the assets derived from the trafficking of narcotics.

13.      Last, in my experience, many cellphones have picture-taking devices on them.   My law enforcement training and experience indicates that drug-dealers like to take pictures or videos of themselves, their drugs, the money made from selling drugs, and the persons with whom they work, that is, with whom they sell drugs.   Moreover, people who possess firearms also like to take pictures of themselves with firearms to prove ownership or possession of a particular firearm to their friends. They will use a camera, cell phone with a camera, tablets with a camera and or personal computers to photograph and store photograph of firearms or themselves holding the firearm and other criminal activity that they may be involved in. These pictures or videos are excellent evidence of illegal gun possession. Moreover, cellphones can contain communications relating to the acquisition of firearms by those who cannot possess firearms legally, including the transmission of photographs of firearms available for purchase, with accompanying price information.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

14.      The property to be searched are nineteen separate cellphones, identified as DEVICES 1 through 19 that were all recovered by law enforcement on February 1, 2018 following the execution of multiple search warrants relating to an ongoing ATF investigation. As set forth in Attachments A-1 through A-19, all nineteen cellphones are currently in the possession of ATF at its secure facility, located at 90 K Street, Northeast, Washington, D.C., and each was given a unique property number in ATF's evidence vault as it pertains to ATF's ongoing investigation in

this matter.

15.     As discussed below, your affiant believes that there is probable cause that Devices 1 through 19 (as described in Attachments A-1 through A-19, as incorporated herein), contain evidence of violations of 21 U.S.C. §§ 841, 846 (drug trafficking offenses) and 18 U.S.C. §§ 922(g), 924(c) (firearms and ammunition offenses) (collectively, the "target offenses"), as well as, evidence of identification, that would further establish the individuals who committed the target offenses (as described and detailed further in Attachment B, as incorporated herein).

**PROBABLE CAUSE**

16.     In June 2017, ATF began investigating the trafficking of narcotics from 2408 Martin Luther King, Jr. (MLK, Jr.), Avenue, Southeast, Washington, D.C. 20020, which included the Next Level Cuts barbershop, and adjoining property above the barbershop.

17.     On January 30, 2018, United States Magistrate Judge Deborah A. Robinson issued search warrants for two physical locations and four vehicles relating to the investigation, which were executed on February 1, 2018. As a result of the search warrants, the grand jury returned indictments against Anthony Fields and Darryl Smith.

18.     On February 6, 2018, Anthony Fields was charged by Indictment in case number 18-cr-23 (APM) with unlawful possession with intent to distribute one hundred grams or more of a mixture and substance containing a detectable amount of phencyclidine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iv)) (Count 1); unlawful possession with intent to distribute one hundred grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i)) (Count Two); and unlawful possession with intent to distribute buprenorphine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)) (Count Three).

19.     On February 27, 2018, Darryl Smith was charged by Indictment in case number 18-

cr-40 (APM)) with possession with intent to distribute a mixture of substance containing a detectable amount of PCP, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)), and unlawful possession of ammunition by a person convicted of a crime punishable in excess of twelve months, in violation of 18 U.S.C. § 922(g). In that indictment, Smith was also charged with a separate violation of 18 U.S.C. § 922(g) in regard to his possession of a loaded firearm on December 24, 2017 in the 2400 block of Martin Luther King, Jr. Avenue (MLK, Jr. Avenue), Southeast, Washington, D.C. On December 24, 2017, Smith was also in possession of twenty-five individually packaged capsules of fentanyl.

20.     On March 8, 2018, a superseding indictment was filed that added the following additional charges to Smith in regard to the events of December 24, 2017: unlawful possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); and using, carrying, and possessing a firearm in furtherance of a crime of violence or drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1).

**2408 MLK, Jr. Avenue, S.E.**

21.     On February 1, 2018, ATF agents and task force officers conducted a search of 2408 MLK, Jr. Avenue, Southeast, pursuant to a search warrant that was authorized by United States Magistrate Judge Deborah A. Robinson on January 30, 2018 (18-sw-20-DAR). The first floor of the premises consisted of the Next Level Cuts barbershop. The second floor of the premises consisted of eight rooms, which included a kitchen and one bathroom.

22.     After breaching a separate unnumbered door on the second floor, which was locked, law enforcement entered the room. Inside the room, law enforcement discovered an air mattress that contained drug paraphernalia and a table with two scales and two plates that contained suspected drug residue. Next to the air mattress was a Louis Vuitton duffel bag, which contained

a silver HTC cellphone, model HTC6525L (Device 1), clear capsules for the packaging of heroin, and two bundles of United States currency that were in rubber bands. In total, the bundles contained approximately $7,020 in United States currency.

23.     In the corner of the room was a black bag that contained 10 full half-ounce vials and 6 full one-ounce vials of an amber liquid that was consistent with phencyclidine (PCP) and a partially filled Everfresh bottle that contained an amber liquid consistent with PCP. Near the bag were two Clorox bottles, both with false bottoms. One Clorox bottle contained individually packaged capsules of suspected heroin that matched the empty capsules contained in the Louis Vuitton duffel bag. The second Clorox bottle contained sandwich baggies of a tan powdery substance consistent with heroin. On the bottom of the mattress was a folded medical document in the name of Anthony Fields, which bore his correct date of birth, and was for a medical appointment scheduled the following week. The suspected PCP and heroin recovered from the room were weighed by law enforcement. The total weight of the PCP was approximately 1,079.5 grams (with packaging) and the total weight of the heroin was approximately 301.8 grams (with packaging). A field test of the substances gave a positive reaction for PCP and heroin, respectively. Law enforcement also recovered a shoebox on the above-referenced mattress that contained two full boxes and one partially filled box of suboxone strips, which are sold in the drug trade (a common term for buprenorphine, a controlled substance). A full box of suboxone strips contains 30 strips. The quantity of the narcotics, plus the presence of drug paraphernalia, and the large amounts of U.S. currency, indicated to law enforcement that the recovered PCP, heroin, and suboxone were consistent with an intent distribute, rather than for mere personal use.

24.     In another room, marked on the exterior by the number 203, agents recovered mail matter in the names of Darryl Smith and Willie Smith and a wallet containing the identification

and social security card of Darryl Smith, and various prescriptions in the name of Darryl Smith. Also found in the room was a clear glass containing a yellow liquid of suspected PCP from a shoebox near the window. The suspected PCP weighed approximately 33.6 grams (with packaging). Agents also recovered one round of ammunition located in the top left dresser drawer, as well as, ammunition found in a sock that was in a backpack to the right of the dresser. Baggies, a razor, scale, gloves, straws, and a plate were also located in the top center dresser drawer.   In the top right dresser, drawer agents recovered a black Samsung Galaxy Note 3, IMEI: 990004387339116 (Device 2). Following his arrest on December 24, 2017, the Defendant indicated that his residence was unit 203 at 2408 MLK, Jr. Avenue, Southeast, Washington, D.C., the same room from which the above-referenced ammunition and PCP were recovered.

25.     Between the unnumbered locked room containing the mail matter in Fields' name and Room 203 that Smith identified that he lived in (and which contained his wallet, identification, and mail matter, among other items) was a kitchen. Inside the kitchen was a locked metal cabinet that contained two separate loaded firearms. The metal cabinet was only a few feet from both of the aforementioned rooms.

**1227 46th Street, Southeast (Fields' Residence)**

26.     On February 1, 2018, ATF agents and task force officers also executed a search warrant at 1227 46th Street, Southeast, Washington, D.C. 20019, pursuant to a search warrant that was authorized by United States Magistrate Judge Deborah A. Robinson.

27.     Inside the residence, agents found miscellaneous documents and a Washington, D.C. identification card bearing the name "Anthony Fields," located in the master bedroom. In a filing cabinet in the corner of the dining room, agents found a notepad with notes and ledger, which was consistent with narcotics record keeping. Also discovered in the dining room against the wall

was a rose gold Samsung Galaxy S7 cellphone, IMEI: 357752071643519 (Device 3) and a Patriot

Mobile Alcatel cellphone (Device 4). Agents found a Motorola cellphone, IMEI:

001700306943670 (Device 5), located in a blue bin in the corner of the living room. In a basket

on a table in the dining room was a LG-VS425LPP cellphone, Serial No. 708VTWP1419969,

IMEI: 358402084169834 (Device 6). Located in a bin on a table in the dining room was a black

Samsung cellphone, Serial No. R21G81CZ8QN, IMEI: 353763070671587 (Device 7), a black LG

cellphone, Serial No. 702CQDG0777050, IMEI: 352990087740508 (Device 8), and four seperate

black Samsung cellphones, each model SM-B311V, that were each provided a distinct ATF

property number, *i.e.*, ATF Evidence Item 43 (Device 9), ATF Evidence Item 44 (Device 10), ATF

Evidence Item 45 (Device 11), and ATF Evidence Item 46 (Device 12). Also recovered from the

same location was a black Samsung cellphone, model SM-B311V (Device 13), a black LG

cellphone, Serial No. 605CQYQ529666, IMEI: 014564-00-529666-9 (Device 14), a black/silver

Alcatel OneTouch cellphone, IMEI: 014451001024594 (Device 15), a black Alcatel OneTouch

cellphone, IMEI: 014556002465719 (Device 16), and a black coolpad cellphone, model 3622A,

IMEI: 863519032596269 (Device 17).

  28. Fields was arrested by law enforcement when he was observed in front of 2408

MLK, Jr. Avenue, Southeast by law enforcement agents. Fields had a white LG cellphone, model

LC676 (Device 18), on his person at the time of arrest. The keys seized from Fields earlier in the

day during a search of his vehicle opened the front red door to the location, as well as, the

unnumbered room where the narcotics, ammunition, and mail matter in the name of Fields were

recovered. In addition, law enforcement learned that Fields sells clothing under the name

"NdaStreets." That clothing was found in a search the Land Rover, pursuant to the above-

referenced search warrant, and inside a plastic bag inside the unnumbered room.

**Silver 2010 Land Rover**

29.     On February 1, 2018, ATF agents also executed a search of a Silver 2010 Land Rover bearing VIN number SALME1D45AA316133 and Washington, D.C. tag FR4706 pursuant to a search warrant that was authorized by United States Magistrate Judge Deborah A. Robinson on January 30, 2018 (18-sw-22-DAR). The vehicle was driven by Fields at the time law enforcement executed the search warrant. Law enforcement seized the keys to the vehicle pursuant to the search warrant and subsequently tested them in the unnumbered door to the above-referenced room on the second floor of 2408 MLK, Jr. Avenue, Southeast. One of the keys on the key chain fit the door that contained the Fields mail matter, PCP, heroin and Suboxone strips. When stopped in his vehicle, Fields also had approximately 24 Suboxone strips on his person and a silver Samsung cellphone (Device 19). A visual examination of the Suboxone strips recovered from the aforementioned room at 2408 MLK, Jr. Avenue, Southeast showed that they were the same types of Suboxone strips that Fields had on his person earlier in the day.

## ANTICIPATED EVIDENCE CONTAINED ON CELLPHONES

30.     The execution of a search warrant on the DEVICES would allow law enforcement to, among other things: (i) identify communications relating to the trafficking of narcotics and communications evidencing the narcotics relationship between individuals; (ii) provide contact information regarding potential supplies, customers, and distributors of narcotics; (iii) identify meeting locations for the potential commencement of drug transactions or acquisition of narcotics; (iv) identify photographs of narcotics and drug paraphernalia (including tools of the drug trade, such as firearms), members of the drug trafficking conspiracy, or items purchased with the proceeds of drug trafficking; (v) identify communications and electronic documentation of the use or acquisition of the firearm recovered in this case from Smith's person and the firearms present

in the kitchen metal cabinet, which was located between Smith and Field's respective rooms on the second floor of 2408 MLK, Jr. Avenue, Southeast; (v) identify communications regarding the use and entry into 2408 MLK, Jr. Avenue, Southeast, including, the payment for access to the property. All of the aforementioned information would constitute evidence of the commission of a narcotics trafficking offense in violation of 21 U.S.C. §§ 841(a)(1), 846 and the commission of a firearms offense, in violation of 18 U.S.C. §§ 922(g)(1), 924(c) (collectively, the target offenses).

31.     All of the DEVICES were in the possession or constructive possession of individuals, Fields and Smith, for whom the grand jury has already found that there exists probable cause to believe committed one or more of the target offenses.

## CAPABILITIES OF CELLULAR PHONES

32.     Based on your affiant's knowledge, training, and experience, a cellphone, a type of digital device, is a handheld wireless device used for voice and data communication at least in part through radio signals and also often through "wi-fi" networks.   When communicating via radio signals, these telephones send signals through networks of transmitters/receivers, enabling communication with other wireless telephones, traditional "land line" telephones, computers, and other digital devices.   A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.   In addition to enabling voice communications, wireless telephones offer a broad range of applications and capabilities. These include, variously: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages, e-mail, and other forms of messaging; taking, sending, receiving, and storing still photographs and video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; global positioning systems ("GPS") locating and tracking technology, and accessing and downloading information

from the Internet. Similarly, information that has been viewed via the Internet is typically stored for some period of time on the device. Even when a user deletes information from a cellphone, it can sometimes be recovered with forensics tools.

33.     In your affiant's training and experience, examining data stored on cellphones can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and contain communications relating to the commission of offenses. Your affiant also knows that those involved in criminal activities take, or cause to be taken, photographs of themselves, their associates, property derived from their criminal activities, and their narcotics products, on cellular telephones.

## METHODS TO BE USED TO SEARCH CELLPHONES

34.     Based on my knowledge, training, and experience, as well as information related to me by agents and others involved in this investigation and in the forensic examination of digital devices, such as, cellphones, I know that:

a.     Searching digital devices, such as cellphones, can be an extremely technical process, often requiring specific expertise, specialized equipment, and substantial amounts of time, in part because there are so many types of digital devices and software programs in use today. Digital devices – whether, for example, desktop computers, mobile devices, or portable storage devices – may be customized with a vast array of software applications, each generating a particular form of information or records and each often requiring unique forensic tools, techniques, and expertise.  As a result, it may be necessary to consult with specially trained personnel who have specific expertise in the types of digital devices, operating systems, or software applications that are being searched, and to obtain specialized hardware and software solutions to meet the needs of a particular forensic analysis.

b.      Digital data is particularly vulnerable to inadvertent or intentional modification or destruction.   Searching digital devices can require the use of precise, scientific procedures that are designed to maintain the integrity of digital data and to recover "hidden," erased, compressed, encrypted, or password-protected data.   Recovery of "residue" of electronic files from digital devices also requires specialized tools and often substantial time.   As a result, a controlled environment, such as a law enforcement laboratory or similar facility, is often essential to conducting a complete and accurate analysis of data stored on digital devices.

c.      Further, as discussed above, evidence of how a digital device has been used, the purposes for which it has been used, and who has used it, may be reflected in the absence of particular data on a digital device.   For example, to rebut a claim that the owner of a digital device was not responsible for a particular use because the device was being controlled remotely by malicious software, it may be necessary to show that malicious software that allows someone else to control the digital device remotely is not present on the digital device.   Evidence of the absence of particular data or software on a digital device is not segregable from the digital device itself. Analysis of the digital device as a whole to demonstrate the absence of particular data or software requires specialized tools and a controlled laboratory environment, and can require substantial time.

d.      Based on all of the foregoing, I respectfully submit that searching any digital device for the information, records, or evidence pursuant to this warrant may require a wide array of electronic data analysis techniques and may take weeks or months to complete.   Any pre-defined search protocol would only inevitably result in over-or under-inclusive searches, and misdirected time and effort, as forensic examiners encounter technological and user-created challenges, content, and software applications that cannot be anticipated in advance of the forensic

14

examination of the devices.   In light of these difficulties, your affiant requests permission to use whatever data analysis techniques reasonably appear to be necessary to locate and retrieve digital information, records, or evidence within the scope of this warrant.

35.     Because forensic examiners will be conducting their search of the digital devices in a law enforcement setting over a potentially prolonged period of time, I respectfully submit good cause has been shown, and therefore request authority, to conduct the search at any time of the day or night.

## CONCLUSION

36.     Based upon the above-referenced facts, your affiant asserts that there is probable cause to believe that Devices 1-19 (as described in Attachment A and incorporated herein by reference) contain evidence of drug trafficking offenses, in violation of 21 U.S.C. §§ 841, 846 and firearms and ammunition offenses, in violation of 18 U.S.C. §§ 922(g), 924(c) (collectively, the "target offenses"), as well as, evidence of identification, that would further establish the Defendant's commission of the target offenses (as described in Attachment B and incorporated herein by reference).

37.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.

38.     I further request that the Court permit the search warrant to be executed at any time given that the Devices are contained on the premises of ATF.

39.     I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge and belief.

_____
Rebekah Moss, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives

Sworn and subscribed to before me this _____ day of March, 2018.

_____
Robin M. Meriweather,
United States Magistrate Judge
For the District of Columbia

## ATTACHMENT A

PROPERTY TO BE SEARCHED

## ATTACHMENT A-1 (Device 1)

A silver HTC cellphone, model HTC6525L that is currently located inside Evidence Item No. 0070 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-2 (Device 2)

A black Samsung Galaxy Note 3, IMEI: 990004387339116 that is currently located inside Evidence Item No. 0097 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-3 (Device 3)

A rose gold Samsung Galaxy S7 cellphone, IMEI: 357752071643519 that is currently located inside Evidence Item No. 30 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-4 (Device 4)

A Patriot Mobile Alcatel cellphone that is currently located inside Evidence Item No. 0031 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-5 (Device 5)

A Motorola cellphone, IMEI: 001700306943670 that is currently located inside Evidence Item No. 0039 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-6 (Device 6)

A LG-VS425LPP cellphone, Serial No. 708VTWP1419969, IMEI: 358402084169834 that is currently located inside Evidence Item No. 0040 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-7 (Device 7)

A black Samsung cellphone, Serial No. R21G81CZ8QN, IMEI: 353763070671587 that is

17

currently located inside Evidence Item No. 0041 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-8 (Device 8)

A black LG cellphone, Serial No. 702CQDG0777050, IMEI: 352990087740508 that is currently located inside Evidence Item No. 0042 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-9 (Device 9)

A black Samsung cellphone, model SM-B311V that is currently located inside Evidence Item No. 0043 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-10 (Device 10)

A black Samsung cellphone, model SM-B311V that is currently located inside Evidence Item No. 0044 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-11 (Device 11)

A black Samsung cellphone, model SM-B311V that is currently located inside Evidence Item No. 0045 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-12 (Device 12)

A black Samsung cellphone, model SM-B311V that is currently located inside Evidence Item No. 0046 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-13 (Device 13)

A black Samsung cellphone, model SM-B311V that is currently located inside Evidence Item No. 0047 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## ATTACHMENT A-14 (Device 14)

A black LG cellphone, Serial No. 605CQYQ529666, IMEI: 014564-00-529666-9 that is currently located inside Evidence Item No. 0048 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## **ATTACHMENT A-15 (Device 15)**

A black/silver Alcatel OneTouch cellphone, IMEI No. 014451001024594 that is currently located inside Evidence Item No. 0049 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## **ATTACHMENT A-16 (Device 16)**

A black Alcatel OneTouch cellphone, IMEI: 014556002465719 that is currently located inside Evidence Item No. 0050 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## **ATTACHMENT A-17 (Device 17)**

A black coolpad cellphone, model 3622A, IMEI: 863519032596269 that is currently located inside Evidence Item No. 0051 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## **ATTACHMENT A-18 (Device 18)**

A white LG cellphone, model LC676 that is currently located inside Evidence Item No. 0108 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

## **ATTACHMENT A-19 (Device 19)**

A silver Samsung cellphone that is currently located inside Evidence Item No. 25 at ATF's secure facility at 90 K Street, Northeast, Washington, D.C.

**ATTACHMENT B**

PROPERTY TO BE SEIZED

The items to be seized are all evidence, contraband, fruits of crime, or other items, used in the commission of a narcotics trafficking offense in violation of 21 U.S.C. §§ 841(a)(1), 846 and the commission of a firearms offense, in violation of 18 U.S.C. § 922(g)(1), 924(c) (collectively, the target offenses), including, but not limited to: call logs, phone books, photographs, voice mail messages, text messages, images and video, Global Positioning System data, and any other stored electronic data:

(i)    establishing or documenting the commission of the target offenses;

(ii)    identifying locations where the individual committed the target offenses, traveled to before and after the commission of the target offenses, and in preparation for the target offenses;

(iii)    reflecting the ownership and use of the items identified in Attachment A by the individual committing the target offenses;

(iv)    documenting meetings and communications between individuals committing one or more of the target offenses;

(v)    reflecting communications between the individual committing one or more of the target offenses and other individuals, discussing the commission of one or more of the target offenses;

(vi)    reflecting communications between the individual committing one or more of the target offenses and other individuals who may have assisted or provided support in the commission of one or more of the target offenses;

(vii)    containing photographs or video that would constitute evidence of a violation of the target offenses;

(viii)    documenting or containing evidence of the obtaining, secreting, transfer, expenditure and/or the concealment of narcotics in violation of 21 U.S.C. § 841(a)(1), which would constitute evidence of one of the target offenses; and

(ix)    documenting or containing evidence of the purchase of items from the assets derived from the commission of a narcotics trafficking offense in violation of 21 U.S.C. § 841(a)(1), which would constitute evidence of one of the target offenses.